## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| YVONNE KIRKLAND, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-00046-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Yvonne Kirkland has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.   By the consent of the parties (*see* Doc. 19), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Doc. 20).

Upon consideration of the parties' briefs (Docs. 14, 15, 16) and the administrative record (Doc. 13) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"),[1] the Court finds that the Commissioner's decision is

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 18, 21).

due to be **REVERSED** and **REMANDED**.

## I.   Background

On May 4, 2011, Kirkland protectively filed applications for DIB and SSI with the Social Security Administration ("SSA"),[2] both alleging disability beginning January 11, 2010.[3]   (R. 35).   After her applications were initially denied, Kirkland requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on December 6, 2012.   (R. 35).   On February 15, 2013, the ALJ issued an unfavorable decision on Kirkland's applications, finding her "not disabled" under the Social Security Act.   (*See* R. 32 – 46).

Kirkland requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review, submitting additional evidence for the Appeals Council's consideration.   The Commissioner's decision on Kirkland's applications became final when the Appeals Council denied Kirkland's request for review on December 4, 2014.   (R. 1 – 5).   On January 30, 2015, Kirkland filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.   (Doc. 1).   *See* 42 U.S.C. § 405(g) ("Any individual,

---

[2] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.  Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)

[3] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.  <u>Standard of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' "  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' "  *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8

(11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).   " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' "   *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.   [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).   "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision."   *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors."   *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted).   In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny."   *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").  " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014).  *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although the "claimant bears the burden of demonstrating the inability to return to [his or] her

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.   In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

"When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.    <u>Claims on Judicial Review</u>

1. "The ALJ erred in rejecting the opinion of the consultative examiner, R. Rex Harris, MD."

2. "The Appeals Council erred in failing to properly consider the updated treating physician records and assessments submitted."

(Doc. 15 at 1).

### IV.    <u>Analysis</u>

At Step One, the ALJ determined that Kirkland had "not engaged in substantial gainful activity since January 11, 2010, the alleged onset date…"   (R. 37).   At Step Two, the ALJ determined that Kirkland had the following severe

impairments: degenerative disk disease of the cervical spine, status post C-6 surgery, degenerative disk disease of the lumbar spine per x-ray, and obesity (R. 37). At Step Three, the ALJ found that Kirkland did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the Listing of Impairments. (R. 37 – 38).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Kirkland had the RFC "to perform sedentary work

as defined in 20 CFR 404.1567(a) and 20 CFR 416.967(a)[6] except that she requires a sit/stand option allowing her to alternate between sitting and standing positions at thirty to sixty minute intervals throughout the workday.  She can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel or crouch.  [She] must avoid concentrated exposure to extreme temperatures, excessive noise and excessive vibrations.  She must avoid all exposure to hazardous machinery and unprotected heights.  Work is limited to simple, repetitive routine tasks of one to three steps due to the possibility of experiencing pain during the workday."  (R. 38).  Based on this RFC, the ALJ determined that Kirkland was "unable to perform any past relevant work…"  (R. 45).  At Step Five, the ALJ then determined that a significant numbers of job exist in the national economy that Kirkland can perform given her RFC, age, education, and work experience – specifically, addressing clerk, charge account clerk, and order clerk.  (R. 45 – 46).  Thus, the ALJ found that Kirkland was not disabled under the Social Security Act.  (R. 46).

### A.      Claim 1 (Consideration of Medical Opinions)

Evidence considered by the Commissioner in making a disability determination may include medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(2) &

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification …has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240. *Accord, e.g.*, *Anderson v.*

*Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).  However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

Kirkland asserts that the ALJ reversibly erred in rejecting the medical opinion of examining physician Dr. R. Rex Harris.   At Step Four, the ALJ summarized Dr. Harris's treatment notes and opinions as follows:

> At the request of the Office of Disability Determinations, a consultative general medical examination was performed by Dr. Richard Rex Harris on July 24, 2012. His impressions were status post fracture C6 with no neurological residual and chronic pain – cervical and lumbar.  He opined the claimant was capable of light to sedentary work in the work place.  On examination, Dr. Harris noted normal grip strength and normal gait.  He found 5/5 lower extremity strength and full range of motion of the hips, knees and ankles.  Sensation was normal in the upper extremities and reflexes were 2+ and equal.  He observed that she had great difficulty getting out of the chair but could lean over and flex to approximately 80 degrees to get her handbag off the floor. Reflexes were 2+ and equal in the lower extremities and sensation was normal.  Muscle groups were 5 out of 5.  Ms. Kirkland could not toe and heel walk and she could not squat and arise.  X-rays of the cervical spine not included in the report revealed evidence of previous C-6 facet

fracture.  X-rays of the lumbar spine showed degenerative changes at L5-S1 (Exhibit 7F [R. 409 – 416]).

Dr. Harris completed a Medical Source Statement form indicating that the claimant could occasionally lift and/or carry up to ten pounds and supported his assessment with findings of back pain and neck pain. He noted she could sit, stand and/or walk about five minutes each for a total of two hours sitting, one hour standing and one hour walking in an eight-hour workday.  The claimant does not require the use of a cane to ambulate.   The claimant can use her bilateral hands occasionally to reach including overhead, reach in all other directions, handle, finger, feel and perform pushing and/or pulling movements. He supported his findings with neck and back pain.  He noted she could occasionally use her bilateral feet in the operation of foot controls.  He indicated the claimant could never climb stairs, ramps, ladders, ropes or scaffolds.   She could never work in unprotected heights, around moving machinery or operate a motor vehicle but could occasionally work in humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat and vibrations.  The examiner opined the claimant could perform activities like shopping, travel without a companion for assistance, ambulate without the use of a wheelchair, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself and care for her personal hygiene.  She can sort, handle or use paper files.

(R. 42).  Fulfilling the requirement that he "state with particularity the weight given to [Dr. Harris's] medical opinions and the reasons therefor[,]"  *Winschel*, 631 F.3d at 1179, the ALJ assigned "little weight" (R. 43) / "no weight" (R. 44), to Dr. Harris's Medical Source Statement because it "is entirely inconsistent with the actual examination and his observations."  (R. 43).  The ALJ further explained:

Dr. Harris concluded the claimant could perform light to sedentary jobs yet on the medical source statement he limited her lifting and/or carrying ability to less than ten pounds and noted she could sit, stand and/or walk a total of four hours in an eight-hour workday.   Such limitations are sedentary in nature and would not allow for light work.[7]  I also that [sic] his physical examination was essentially

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or

unremarkable.  There was full range of motion of her neck, shoulders, elbows, wrist and fingers.  Grip strength was normal bilaterally and sensation was normal in the upper extremities.  Reflexes were equal in both the upper and lower extremities.   Initially, the claimant demonstrated no ability to flex her lumber spine much less get out of her chair; however, he commented she could bend over 80 degrees to get her handbag off the floor.   Such an ability either shows a remarkable recovery or suggests she may have been magnifying her alleged inabilities to get out of the chair and flex her lumbar spine. Given her previously discussed testimony where she limited herself to sitting only 20 minutes,[8] the greater weight of evidence supports that the claimant was magnifying her limitations before the examiner.

Dr. Harris also noted on the medical source statement that the claimant could sit for only five minutes at any time but found she had normal gait with 5/5 lower extremity strength and full range of motion of the hips, knees, and ankles.  Such a limited ability to stand and/or walk does not agree with his assessment.  He noted she could sit for only five minutes at any time yet she apparently sat through the interview/evaluation for longer than five minutes.  She also was able to sit for 35 to 40 minutes during the hearing.  Again, his opinion is not supported by his own observations/assessments made during the physical examination.  He also rated her postural as "never" and only occasional environment limitations (Page 7 [R. 415]) but did not identify through physical examination any limitations that would support such ratings.  These numerous mistakes and/or inconsistencies have rendered his opinion unreliable and of no weight, whereas his actual observations and assessments from the physical examination and her demonstrated functional abilities warrant considerable weight.

(R. 43 – 44).

Kirkland complains that the ALJ determined "she was magnifying her

---

carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[8] Earlier in his opinion, the ALJ noted Kirkland's testimony at the administrative hearing "contend[ing] she is able to sit less than 20 minutes."  (R. 39).  Specifically, when asked by the ALJ how long she can stand before she needs to sit down, Kirkland responded, "I guess about 20 minutes."  When next asked how long she could sit before needing to get up and move around, Kirkland responded, "Less than that."  (R. 67).

limitations" before Dr. Harris when "Dr. Harris never made any such suggestion." (Doc. 15 at 4). The ALJ apparently reached this conclusion based on his own interpretation of Dr. Harris's notes (i.e., "Initially, the claimant demonstrated no ability to flex her lumber spine much less get out of her chair; however, he commented she could bend over 80 degrees to get her handbag off the floor. Such an ability either shows a remarkable recovery or suggests she may have been magnifying her alleged inabilities to get out of the chair and flex her lumbar spine.") and his observations of Kirkland at the administrative hearing (i.e., "She also was able to sit for 35 to 40 minutes during the hearing."). It is true that an ALJ may consider "a claimant's appearance and demeanor during the hearing" when making a credibility determination of the claimant's own subjective testimony of pain. *See Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985). Even then, however, courts "do not accept an ALJ's mere reliance on his observation of a claimant during a hearing as the only basis upon which to reject a claimant's reference to pain[,]" and "an ALJ must not impose his observations in lieu of a consideration of the medical evidence presented." *Id.* at 1158. *See also Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam) (finding that the ALJ "improperly substituted his judgment of the claimant's condition for that of the medical and vocational experts"); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (" 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or

her own credibility judgments, speculation or lay opinion.' " *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotations omitted) (emphasis added). Although we may not second-guess an ALJ's credibility judgments, such judgment by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.' *Id.* at 318."). The ALJ was not free to infer magnification at Dr. Harris's examination when Dr. Harris himself made no such suggestion in his objective observations. *Cf. Harris v. Barnhart*, 65 F. App'x 129, 131 (9th Cir. May 7, 2003) (per curiam) (unpublished) ("Another reason given for disregarding Dr. Georgis's opinion was that Dr. Georgis failed to answer two questions on an SSA questionnaire related to the claimant's 'malingering.' The ALJ explicitly assumed that Dr. Georgis omitted those answers because they would have been adverse to his patient, and then treated the inferred adverse answers as affirmative evidence supporting the decision to disregard the doctor's expressed opinion. That approach impermissibly put words in Dr. Georgis's mouth and was not a reasonable inference under the circumstances." (record citation omitted)).

Nevertheless, substantial evidence supports the ALJ's decision to assign little or no weight to Dr. Harris's opinion. As the ALJ noted, there were inconsistencies in Dr. Harris's opinions themselves. While his treatment notes stated it was his "medical opinion that [Kirkland] is capable of light to sedentary work in the work place" (R. 410), the limitations in his Medical Source Statement allowed only for sedentary work. Moreover, Dr. Harris's treatment notes reflected that Kirkland had "full range of motion of her neck, shoulders, elbows, wrist and fingers," normal

grip, normal sensation and equal reflexes in the upper and lower extremities, "full range of motion of the hips, knees and ankles," and normal gait with 5/5 muscle groups in the lower extremities.  (R. 410).  As the ALJ reasonably noted, these largely "unremarkable" observations did not support the severity of limitations expressed in his Medical Source Statement.

Kirkland further contends that "the marked restrictions of motion of the lumbar spine" purportedly observed by Dr. Harris at the examination do not support the ALJ's characterization of the examination as "unremarkable."  (Doc. 15 at 4).  Kirkland does not identify where these "marked restrictions" are found in Dr. Harris's notes.  In regards to Kirkland's lumbar movement, Dr. Harrison did note that her "extension is 0 and lateral motion is 10," but Kirkland has not explained the significance of these observations.  Moreover, Dr. Harris noted that, while Kirkland "initially could not do lumbar flexion," she eventually "could lean over and flex to approximately 80 degrees to get [her] handbag off the floor."  (R. 410).  Overall, the ALJ's determination that Dr. Harris's objective observations were overall "unremarkable" is supported by substantial evidence and will not be disturbed.  *See Ingram*, 496 F.3d at 1260 ("Even if the evidence preponderates against the Commissioner's factual findings, we must affirm if the decision reached is supported by substantial evidence." (quotation omitted)).

Though not specifically listed as a "claim on appeal," in the final paragraph of the section addressing Claim 1 in her brief, Kirkland also argues the ALJ erred in rejecting "the statement by Dr. Timberlake that Ms. Kirkland was totally and

completely disabled."   (Doc. 15 at 5).[9]   Kirkland correctly notes that "one of the reasons he rejected that opinion was that the [treating] neurosurgeon, Dr. McKenzie, did not mention a back problem."   (*Id.* (citing R. 44)).   Kirkland argues that Dr. McKenzie's opinion should not have overridden Dr. Timberlake's because Dr. McKenzie only treated Kirkland's neck and expressly declined to treat her back, as that was not his specialty.   (*See id.*).

However, the ALJ provided four additional bases for rejecting Dr. Timberlake's opinion that Kirkland was "completely and totally disabled": (1) the opinion was made only 3 months after Kirkland was injured by a tornado; (2) the opinion resulted from a single, one-time office visit and was not supported by imaging or neurological/orthopedic studies; (3) medical records from another health care provider Kirkland visited right after the tornado injury did not mention appreciable back pain; and (4) this is an opinion reserved for the Commissioner.   (R. 44).   Kirkland fails to address, or even acknowledge, these alternative bases for rejecting Dr. Timberlake's opinion.

The ALJ correctly noted that Dr. Timberlake's opinion of disability as being an issue reserved for the Commissioner.   *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (opinions that a claimant is disabled "are not medical opinions, … but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability").   Such an opinion, even from a treating

---

[9] The Commissioner has not cried foul and has addressed this additional claim on the merits in her brief.

source, is "never entitled to controlling weight or special significance," though it also

"must never be ignored."  SSR 96-5P, 1996 WL 374183 (S.S.A. July 2, 1996).  Here,

the ALJ expressly considered Dr. Timberlake's opinion and articulated four specific

reasons why it was inconsistent with or not bolstered by the other evidence of

record, only one of which Kirkland has addressed.[10]  Kirkland has given the Court

no reason to question the ALJ's other reasons.   Thus, the Court finds no error in

the ALJ's rejection of Dr. Timberlake's opinion that Kirkland was "completely and

totally disabled."

Accordingly, the Court **OVERRULES** Kirkland's assertions of reversible

error in Claim 1.

### B.     Claim 2

> "With a few exceptions, the claimant is allowed to present new
> evidence at each stage of this administrative process," including before
> the Appeals Council. *Ingram v. Comm'r of Soc., Sec. Admin.,* 496 F.3d
> 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion
> not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b).
> But the Appeals Council "must consider new, material, and
> chronologically relevant evidence" that the claimant submits. *Ingram,*
> 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b).

*Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per

curiam).  "When the Appeals Council refuses to consider new evidence submitted to

it and denies review, that decision is subject to judicial review … [W]hen the

---

[10] The Court notes that, under SSR 96-5P, an ALJ is only required to "explain the consideration given to" opinions on issues reserved for the Commissioner when they are from treating sources.  At the time he gave his opinion of total disability, and at the time the ALJ issued his decision, Dr. Timberlake had only examined Kirkland once and thus could not be considered her treating physician.

Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* at 1321 (quotation omitted).

In requesting that the Appeals Council review the ALJ's unfavorable decision, Kirkland presented additional medical evidence from Dr. Timberlake dated April 3 – December 18, 2013.  (R. 2, 14 – 17, 26 – 31).[11]  Kirkland argues that the Appeals Council failed to adequately consider Dr. Timberlake's "forms" and "updated treatment notes" – in particular, a Medical Source Statement (Physical) dated June 24, 2013 (approximately two months following the ALJ's decision) (R. 26), which Kirkland asserts "include[s] limitations very similar to those assigned by Dr. Harris[,]" such consistency thus "render[ing] both more credible."  (Doc. 15 at 5).

"In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence **only where it relates to the period on or before the date of the administrative law judge hearing decision**."  20 C.F.R. §§ 404.970(b), 416.1470(b) (emphasis added).  The Appeals Council declined to consider this additional medical evidence in denying Kirkland's request for review, *compare* (R. 2 ("In looking at your case, we considered … the additional evidence listed on the enclosed Order of Appeals Council … We found that this information does not provide a basis for changing the Administrative Law Judge's decision.  We **also** looked at records from Perry Timberlake, M.D. dated April 3 – December 18, 2013 …" (emphasis added))) *with* (R. 5 – 6 (noting additional evidence considered as

---

[11] Kirkland also presented medical records from Spain Rehabilitation Center dated October 25, 2013 (*see* R. 2) but has not argued any error relating to this evidence.

consisting of "representative brief" and "education records dated 8/1/1985 through 6/1/1989")), because it determined the evidence was not chronologically relevant. Specifically, the Appeals Council stated that it had "looked at" the new evidence and determined that it was "about a later time" from the ALJ's February 15, 2013 decision and "not affect the decision about whether [Kirkland] w[as] disabled beginning on or before February 15, 2013." (R. 2).

Kirkland's primary argument is that the Appeals Council declined to review the new evidence "for no reason other than the dates being after the date of the ALJ's decision," asserting that this was reversible error because new "evidence does not have to be dated before the date of the ALJ's decision in order to relate to that period." (Doc. 15 at 5). While the Appeals Council did note the dates of Dr. Timberlake's new records, all of which were after the ALJ's decision, it also expressly stated it had "looked at" the new records and found that the "new information is about a later time" (R. 2). Given that the Appeals Council is not required to provide a detailed rationale in denying review, and Kirkland having cited no authority to the contrary, the Court finds that this statement adequately indicates the Appeals Council considered the substance of the new evidence, rather than simply the dates at the top, in finding it to be chronologically irrelevant.

However, Kirkland is correct that "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." *Washington*, 806 F.3d at 1322. This is true even when, as here, the physician "never explicitly state[s] that his opinions related back to the date of the ALJ's

decision" but bases it upon consideration of issues that predate the ALJ's decision. *Id.*[12]  The Court finds that, contrary to the Appeals Council's determination, Dr. Timberlake's September 24, 2013 opinion is chronologically relevant, despite his failure to specifically state that the opinion related back to a date on or before the ALJ's decision.  As noted above, Kirkland had already been examined once by Dr. Timberlake prior to the ALJ's decision for "chronic low back pain with radiation to bilateral legs" less than three months after being injured by a tornado, and the ALJ expressly considered Dr. Timberlake's notes and opinions from that examination. Dr. Timberlake also examined Kirkland twice after the ALJ's decision and before issuing his opinion – on April 3 and May 8, 2013 – with the treatment notes from those examinations (R. 28 – 31) noting Kirkland's "history of Chronic pain" in her lower back and neck stemming from injuries sustained in her 2010 car accident and the 2011 tornado, issues which predate the ALJ's decision and were expressly considered by the ALJ.  *Cf. Washington*, 806 F.3d at 1322 ("The opinions contained in Dr. Wilson's materials—including that Mr. Washington had extreme limitations in social interaction, sustained concentration, and persistence—are chronologically relevant even though Dr. Wilson examined him several months after the ALJ's decision. Dr. Wilson based his opinions on the combined effects of Mr. Washington's hallucinations and limited cognitive abilities. Dr. Wilson understood that Mr. Washington had experienced hallucinations during the time period prior to the ALJ's decision because (1) Mr. Washington told Dr. Wilson that he had experienced

---

[12] *Washington* was issued December 1, 2015, after briefing had closed and this action was taken under submission.  Neither party sought to bring it to the Court's attention.

hallucinations throughout his life, and (2) Dr. Wilson reviewed Mr. Washington's mental health treatment records from the period before the ALJ's decision reflecting that he repeatedly reported experiencing auditory and visual hallucinations. Further, Dr. Wilson's opinions about Mr. Washington's cognitive defects, including that his verbal skills were in the range of borderline or intellectual disability, relate back to the period before the ALJ's decision."); *Clough v. Soc. Sec. Admin., Com'r*, No. 15-11676, at p.3 (11th Cir. Jan. 6, 2016) (per curiam) (unpublished) ("In addition to conducting a physical examination, Dr. Prince relied on evidence of: (1) Clough's epilepsy 'since being a child'; (2) his hip surgery in 2000 and a spinal injury in 2009; and (3) his last gainful employment in August 2009.  All of these issues predate the ALJ's June 2012 determination. Dr. Wilson's opinions about Clough's cognitive limitations, borderline intelligence, and depression also relate to issues that manifested before the ALJ's decision. Even though neither doctor specified that his opinion applied to the time period before the ALJ's decision, we find that Dr. Wilson and Dr. Prince's evaluations were chronologically relevant." (citing *Washington*, 806 F.3d at 1322)).

Though the Appeals Council appears to have acknowledged that Dr. Timberlake's additional evidence was "new information" (R. 2), the Commissioner argues here that the evidence, in addition to being chronologically irrelevant, was cumulative (*see* Doc. 16 at 11).  *See Washington*, 806 F.3d at 1321 n.6 (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986), as "recognizing that

cumulative evidence is not new").[13]  In pressing this assertion, however, the Commissioner mistakenly focuses on Dr. Timberlake's repetition of his earlier opinion, rejected by the ALJ, that Kirkland was "completely and totally disabled." (*See* Doc. 16 at 11 (citing R. 27, 31)).  If this were the only opinion that Dr. Timberlake had given in the evidence presented to the Appeals Council, the Court would likely agree that this opinion was simply cumulative of his previous one, which the ALJ properly rejected as being an opinion of an issue reserved to the Commissioner.  However, the Commissioner fails to address Dr. Timberlake's opinions in his September 24, 2013 Medical Source Statement (R. 26), the opinion Kirkland primarily contends the Appeals Council should have considered, and which contains specific findings as to Kirkland's physical limitations.

The Court finds that Dr. Timberlake's September 24, 2013 opinion is new, material, and chronologically relevant evidence that the Appeals Council was required to consider.  *See Washington*, 806 F.3d at 1321 (opinions are "material" when, if accepted, there is a reasonable possibility that they would change the administrative result).  At the time of the ALJ's decision, Dr. Timberlake was a one-time examining physician whose only given opinion was on an issue reserved to the Commissioner, which the ALJ was not required to specially credit.  By the time he issued his September 24, 2013 opinion, however, Dr. Timberlake had examined Kirkland at least twice more, and he continued to examine her after that opinion.

---

[13] Though the Appeals Council did not expressly rely on such a rationale when rejecting the additional evidence, the Court will consider this argument.  *Cf. Washington*, 806 F.3d at 1321-22 (addressing whether new evidence was "material" when raised by the Commissioner on appeal even though the Appeals Council had only refused to consider new evidence as chronologically irrelevant).

Thus, there is a reasonable probability that his September 24, 2013 opinion would be considered the opinion of a treating physician entitled to substantial or considerable weight, absent good cause.[14]

The only other treating source to provide an opinion as to Kirkland's physical impairments was treating surgeon Dr. McKenzie.  The ALJ had assigned "great weight" to the "conclusion and opinion" of Dr. McKenzie, "who in August 2011 indicated that [Kirkland's] neck radiographs looked good/excellent when releasing her from her service and refusing to give her any more Lortabs."  (R. 44 (citing SSA Exs. 6F and 11F)).  However, it is undisputed that Dr. McKenzie treated only Kirkland's neck pain, while Dr. Timberlake treated both Kirkland's neck and lower back pain.  Moreover, Dr. McKenzie's "opinions" consist of only passing statements made in brief notes from two examinations that Kirkland's x-rays looked "excellent" and "good" and that she was doing reasonably well.  (R. 406, 452).  Dr. McKenzie provided no specific opinion of Kirkland's physical limitations, as Dr. Timberlake did in his September 24, 2013 Medical Source Statement.

Thus, the Court **SUSTAINS** Kirkland's assertions of error in Claim 2. "Because Dr. [Timberlake]'s opinions are new, material, and chronologically

---

[14] "A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' "  *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' "  *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).  This rule applies "even if the physician did not treat the claimant during the relevant period of time."  *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 n.7 (11th Cir. Dec. 5, 2011) (per curiam) (unpublished) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)).

relevant evidence, the Appeals Council was required to consider them.  The Appeals Council's refusal to consider the new evidence from Dr. [Timberlake] was an error of law. Accordingly, [the Court will] reverse …. and remand … to the Commissioner for consideration of this evidence in conjunction with all the other evidence in the record." *Washington*, 806 F.3d at 1323 (footnote omitted).

## V.   Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued December 4, 2014, denying Kirkland's applications for DIB and SSI benefits is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision.  This remand under sentence four of § 405(g) makes Kirkland a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Kirkland's counsel an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty days after receipt of a notice of award of benefits from the Social Security Administration.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. Jan. 8, 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice

for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 17th day of February 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**